## MAC MARTIN ADVERTISING AGENCY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8115. Promulgated March 23, 1928.

*Arnold L. Guesmer, Esq.*, for the petitioner.
*J. B. Harlacher, Esq.*, for the respondent.

OPINION.

SMITH: A personal service corporation is defined by section 200 of the Revenue Act of 1918. To come within that definition a corporation must meet all of the requirements of the statute enumerated as follows:

1. The income of the corporation must be ascribed primarily to the activities of the principal owners or stockholders.

2. The principal owners or stockholders must themselves be actually engaged in the active conduct of the affairs of the corporation.

3. Capital (whether invested or borrowed) must not be a material income-producing factor.

4. Gains, profits or income derived from trading as a principal must not amount to or exceed 50 per centum of the gross income.

No question is raised by the respondent but that the petitioner met the other requirements of a personal service corporation.

The first element of the definition of a personal service corporation is directed toward the elimination of inequality of taxation of partnerships, on the one hand, and corporations in which the income is due primarily to the personal activities of the principal stockholders (whether professional, clerical, executive, or manual), on the other hand. * * * (*Hubbard-Ragsdale Co.* v. *Dean*, 15 Fed. (2d) 410.)

The question before the Board is primarily one of classification. If the petitioner fairly meets the requirements of a personal service corporation it is to be taxed as such. This is not a question of the exemption of the petitioner from taxation; for a personal service corporation is not exempt from taxation.

The application of section 200 of the Revenue Act of 1918 to an advertising agency received careful consideration in the case of *Fuller & Smith* v. *Routzahn*, 23 Fed. (2d) 959. The decisions of the Board and of the courts in personal service corporation tax cases were exhaustively reviewed in that case. The facts in this case are much the same as those which obtained in the case considered by Judge Westenhaver.

The first objection made by the respondent to the classification of the petitioner as a personal service corporation is that the income of the corporation can not be ascribed primarily to the activities of the principal owners or stockholders. We think, however, that the evidence is to the contrary. Most of the clients of the petitioner were obtained by Mac Martin and C. R. Ferrall. They were in close personal touch with the advertisers and were responsible for the

success of the agency. We can not doubt that the advertisers placed their business in the hands of the petitioner by reason of the personal services rendered by these stockholders. It is inconceivable that this business could have been retained by the petitioner had these men not been connected with it.

The respondent also objects that the second largest stockholder, Mary W. Martin, was not actually engaged in the active conduct of the affairs of the corporation and therefore that it can not be said that the principal owners or stockholders were actually engaged in the active conduct of the business of the petitioner.

Mary W. Martin owned slightly more than 20 per cent of the stock of the corporation. All of the other stockholders were actively engaged in the business of the corporation. We think that the ownership by Mary W. Martin of approximately 21 per cent of the stock of the corporation is insufficient to defeat the provision of the statute that the principal owners or stockholders must themselves be actually engaged in the active conduct of the affairs of the corporation. Cf. *Harry S. Kaufman, Ltd.* v. *Commissioner of Internal Revenue*, 24 Fed. (2d) 44.

We now come to the question as to whether capital, whether invested or borrowed, was a material income-producing factor. Witnesses for the petitioner testified that capital was not essential in the conduct of an advertising agency; that the petitioner in no case attempted to finance its clients and that it had an agreement with them to the effect that in all cases advertising bills should be paid to the petitioner within such time as would enable it to remit to the publishers before the due date. This was in order that the petitioner might take advantage of the large discounts offered by the publishers for the prompt payment of bills. In 1919 the petitioner sent 1,430 bills to advertisers and in only 191 cases did the advertiser fail to remit to the petitioner before it was necessary for the petitioner to forward the remittances to the publisher in order to obtain a discount. It further is in evidence that where the petitioner remitted to the publisher before the advertiser paid the bill, the advertiser was not more than a few days late in making payment. Only a negligible amount of earnings was realized by the petitioner from its capital. In the light of these facts we think that capital was not a material income-producing factor in producing the income of the petitioner.

The respondent also objects to the classification of the petitioner as a personal service corporation upon the ground that it can not be said that gains, profits or income derived from trading as a principal did not exceed 50 per centum of the gross income. This argument is based upon the contention that the petitioner purchased

space from publishers which it sold to the advertiser. In our opinion the evidence does not support this contention. The same contention was considered by the court in *Fuller & Smith* v. *Routzahn*, *supra*, and also by the Board in *S. A. Conover Co.*, 6 B. T. A. 679. The petitioner clearly was not contracting for space in publications which it sold to advertisers. Although it derived some profit upon drawings and plates which it made or had made for it and furnished to the advertiser the amount of income from this source was far less than 50 per cent of the total income. Upon the record as made the claim of the petitioner that it was a personal service corporation for the period February 1 to December 31, 1919, must be and is sustained.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*